IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MARVEL JONES,

                    Plaintiff,                                    **8:20CV365**

          vs.

NEBRASKA DEPARTMENT OF
CORRECTION SERVICES; CRAIG
GILSDORE, Agreement Administrator,
Special Services Unit for Nebraska
Department of Correction Services; DR.
AGNES M. STANIS, PH.D. for Nebraska
Department of Correction Services;
LANCASTER COUNTY SHERIFF                              **MEMORANDUM**
DEPARTMENT; SHERIFF OFFICER                            **AND ORDER**
UNKNOWN; CITY OF LINCOLN;
NEBRASKA POLICE DEPARTMENT
OF LINCOLN, NEBRASKA; ONE
UNKNOWN POLICE OFFICER; TWO
UNKNOWN POLICE OFFICERS; BRAD
JOHNSON, Director of Lancaster County
Correction Department; TERRY T.
WAGNER, Sheriff of Lancaster County,
Nebraska; TIMOTHY F. DUNNING,
Sheriff of Lancaster County or Douglas
County Nebraska; BRENDA A. JONES,
Sheriff of Lancaster County or Douglas
County Nebraska; LANCASTER
COUNTY PUBLIC DEFENDER OFFICE;
KRISTI J. EGGER, Deputy Public
Defender for Lancaster County; JOE
NEGRO, Chief Public Defender for
Lancaster County, Nebraska; DEBERA K.
LYNFORD, Lancaster County Board of
Mental Health Chairperson; MARY K.
GUINN, Member of Lancaster County
Board of Mental Health; DR. MARK
VANGHIN, Member of Lancaster County

Board of Mental Health; DR. ROBERT
ARIAS, Neuropsychology and Behavioral
Medicine, PC; STEPHEN O'NEILL, M.D.,
at Norfolk Regional Center; KATHY
HERIAN, 3-East Unit Supervision at
Norfolk Regional Center; ROSETTA
MCALLISTER, R.N. at Norfolk Regional
Center; VERLIN REDLINGER, Activity
Assistant at Norfolk Regional Center;
CHERYL HEIMANN, Social Worker at
Norfolk Regional Center; HANNAH
NEAL, Provisional Psychiatrist at Norfolk
Regional Center; MIKE GETTMAN,
Psychiatrist and Social Worker at Norfolk
Regional Center; BEVERLY J.
LUESHEN, Psychiatrist and Social Worker
at Norfolk Regional Center; TODD
PHELPS, Psychiatrist and Social Worker
at Norfolk Regional Center;
LANCASTER COUNTY DEPARTMENT
OF CORRECTIONS;  THE NEBRASKA
DEPARTMENT OF HEALTH AND
HUMAN SERVICES;  NORFOLK
REGIONAL CENTER; DANNETTE
SMITH, Chief Executive Officer of the
Nebraska Department of Health and
Human Services; JOHN KNOLL, Facility
Operating Officer at Norfolk Regional
Center; TOM BARR, Director of Norfolk
Regional Center; KRIS BOE SIMMONS,
Director Clinical Program Manager at
Norfolk Regional Center; JULIE
REDWING, Director of Nursing at Norfolk
Regional Center; DR. JEAN LAING, Of
Norfolk Regional Center Psychiatrist and
Social Worker; SHERI DAWSON,
Behavioral Director at Nebraska
Department of Health and Human
Services; MARK LABOUCHADIERE,
Facility Director at Nebraska Department

2

of Health and Human Services; SPENCE
PROPEL, Director of Regional Centers of
Nebraska; JOHN REYNOLDS, In Charge
of Regional Centers of Nebraska, Under
Nebraska Department of Health and
Human Services; MELANIE
WHITTAMORE-MANTZIOS, Attorney at
Wolfe Snowden Hurd Luers-Ahl LLP;
TWO (2) UNKNOWN FEMALE
EMPLOYEES JANE DOES AT
NORFOLK REGIONAL CENTER;
TABITHA WAGGONER, Therapist and
Social Worker at Norfolk Regional Center;
BRANDI, Therapist and Social Worker at
Norfolk Regional Center;  MARSHALL,
Therapist and Social Worker at Norfolk
Regional Center;  SHANNON, Therapist
and Social Worker at Norfolk Regional
Center; AMANDA HOLMGREEN,
Contractor Therapist at Norfolk Regional
Center; KIM ELLENBERGEE,
Provisional Therapist at Norfolk Regional
Center;  CANDI, Director of Personal
Development Department at Norfolk
Regional Center; STEVE LINDSTADT,
Activity Assistant of Personal
Development Department at Norfolk
Regional Center; MICHELLE, Director of
Personal Development Department at
Norfolk Regional Center; BONNIE,
Activity Assistant of Personal
Development Department at Norfolk
Regional Center; DAYNA, Activity
Assistant of Personal Development
Department at Norfolk Regional Center;
TRACY, Activity Assistant of Personal
Development Department at Norfolk
Regional Center; MEGAN DONAVAN,
Psychiatrist and Counsel PH.D. at Norfolk
Regional Center; PATRICIA BRAND,

3

Patient Services Department at Norfolk
Regional Center; MIRANDA,
Provisionally Licensed Group Facilitator
and Social Worker at Norfolk Regional
Center; PATTIE, Chemical Dependency
Group Facilitator at Norfolk Regional
Center; VICTER VANFLEET, Chemical
Dependency Group Facilitator at Norfolk
Regional Center; DAWN COLLINS,
Registered Nurse at Norfolk Regional
Center; TERRI BRUEGMAN, 3-East Unit
Supervisor at Norfolk Regional Center;
TRAVICE, Patient Service at Norfolk
Regional Center;  COMPLIANCE TEAM
6 UNKNOWN JANE AND JOHN DOES
AT NORFOLK REGIONAL CENTER;
LISA, Activity Assistant and Librarian
Personal Development Department East at
Norfolk Regional Center; CHRIST,
Activity Assistant Personal Development
Department East at Norfolk Regional
Center; RYAN, Activity Assistant Personal
Development Department East at Norfolk
Regional Center; SECURITY
SPECIALIST I'S TEN (10) UNKNOWN
JOHN DOES AT NORFOLK REGIONAL
CENTER; and SECURITY SPECIALIST
TECHNICIANS UNKNOWN JANE AND
JOHN DOES AT NORFOLK REGIONAL
CENTER,
each sued in their individual and official
capacities,

                    Defendants.

Plaintiff, a patient at the Norfolk Regional Center, has been given leave to proceed in forma pauperis. (Filing 7.) The court now conducts an initial review of

Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

In a case reminiscent of many he has previously filed[1], Plaintiff sues more than 80 Defendants in a 96-page Complaint objecting to his illegal criminal conviction[2], his unjustified transfer to the Norfolk Regional Center ("NRC"), and conditions of his confinement at the NRC. Plaintiff describes the basis of his case as this: "an illegal civil commitment growing out of an illegal criminal conviction on August 30, 1996." (Filing 1 at CM/ECF p. 8.) Plaintiff makes the following claims:

(1)    The Lancaster County District Court and the Lancaster County Board of Mental Health never acquired jurisdiction over Plaintiff because he was two days short of "completing" his sentence when he was transferred to the NRC, in violation of Neb. Rev. Stat. § 71-1202, and there was no court order mandating his commitment to the NRC. Plaintiff's wrongful commitment to the NRC forces him to "live in fear" of being attacked by "psychotic" fellow patients who are "mentally disturbed and suicidal and psychologically unstable." (Filing 1 at CM/ECF p. 20.)

(2)    Many Defendants "failed to train" other Defendants "in this civil conspiracy against Plaintiff."

(3)    With regard to his underlying criminal conviction, Plaintiff was subject to a warrantless arrest for first-degree sexual assault; the criminal citation and complaint

---

[1] *See Jones v. Carter*, No. 8:20CV62 (prisoner civil rights case); *Jones v. Barr*, No. 8:20CV81 (habeas case); *Jones v. Dawson*, No. 8:20CV275 (habeas case); *Jones v. Carter*, No. 8:19CV288 (prisoner civil rights case).

[2] Plaintiff was convicted in 1997 in the District Court of Lancaster County, Nebraska, and sentenced to 25 to 40 years' imprisonment for first-degree sexual assault. *See State v. Jones*, 577 N.W.2d 302 (Neb. App. 1998).

was not filed with Lancaster County or the Lancaster County District Court; and the county attorney issued an untimely criminal complaint that was defective on its face because it did not comply with Neb. Rev. Stat. § 29-424.

(4)     Defendant Kristi Egger, Plaintiff's public defender who represented him before the mental health board, breached her fiduciary duty, duty of loyalty, duty to provide competent service, duty of honesty, duty to act in a timely fashion, and duty to bring to the board's attention the jurisdiction issue.

(5)     The NRC has a custom, policy, and practice of treating sex offenders in a way that increases the duration of offenders' confinement and removes privileges if the offenders refuse to participate.

(6)     The NRC is violating its own policies because patients are to be considered for transfer to the Lincoln Regional Center if they reach a "Level 3 or 4," and Plaintiff has reached such levels but has not been transferred.

(7)     Plaintiff is being denied access to the courts because of the NRC's 12-inch legal paper limit and the lack of a law dictionary, telephone book, Nebraska bar directory, and legal aid or paralegal.

(8)     The NRC has a policy of searching patient's cells outside of their presence, including searching through legal documents and personal letters and failing to issue "search forms" after the search is concluded.

(9)     The NRC failed to give Plaintiff flyers and a free ink pen that came with a wrist-watch he ordered and forced Plaintiff to surrender his uneaten holiday food items to the local food pantry instead of sending them to family members.

(10)     When Plaintiff was accused of rule violations, he did not have the right to address the allegations and evidence against him at a disciplinary hearing, to present witnesses on his behalf, to have legal assistance, to prepare a defense, or to appeal the

6

decisions of the treatment team. These accusations have caused an increase in the duration of his confinement, affected his "scoring levels," and caused privilege suspension without notice. (Filing 1 at CM/ECF pp. 13 & 18.)

(11)   Security specialists or technicians—who monitor Plaintiff's behavior, write reports, and "score" Plaintiff—practice mental-health care without a license in violation of Neb. Rev. Stat. §§ 38-2115, 38-2116, and 38-2122 because they do not have advanced educational degrees and have not been certified by the Nebraska Mental Health Practice Board under Neb. Rev. Stat. § 38-2105.

(12)   Defendant Whittamore-Mantzios, an attorney allegedly under contract with the Nebraska Department of Health and Human Services ("NDHHS") to assist patients like Plaintiff with legal issues, refused to help Plaintiff with this case.

(13)   Two unknown female receptionists forced plaintiff to sign "unknown papers and documents under duress" when he arrived at the NRC. Further, Defendant Cheryl Heimann forced Plaintiff to sign a sex-offender-registration document "against Plaintiff['s] will." (Filing 1 at CM/ECF p. 20.)

(14)   Defendant Rosetta McAllister, R.N., gave Plaintiff the wrong medication nine months ago, which caused Plaintiff to experience pain above his heart for two months.

Plaintiff purports to bring claims under 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1987, and 1988 for violation of his rights under the United States and Nebraska constitutions, as well as state-law claims for abuse of process, malicious prosecution, false imprisonment, conspiracy, negligent and intentional infliction of emotional distress, and false arrest. Plaintiff requests money damages only against Defendants in their individual and official capacities.

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION

### A.  Statutory Grounds for Claims

Plaintiff alleges violations of several federal statutes, many of which do not serve as a proper basis for Plaintiff's claims.

### 1.  Section 1981

"To state a claim under § 1981, a plaintiff must plead: '(1) that [the plaintiff] is a member of a protected class; (2) that [the defendant] intended to discriminate on the basis of race; and (3) that the discrimination on the basis of race interfered with a protected activity as defined in § 1981.'" *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 766 (8th Cir. 2016) (quoting *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004)). Here, Plaintiff makes no allegations whatsoever that any actions taken by the Defendants were racially motivated. Thus, Plaintiff has not stated a plausible claim for relief under § 1981.

### 2.  Section 1983

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). In addition, the Eleventh Amendment bars claims for damages that are brought in federal court by private parties against a state, a state instrumentality, or a state employee who is sued in his or her official capacity. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995).

Only individual-capacity claims alleged against such employees are potentially maintainable under § 1983. As to such individual-capacity claims, "[t]o prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Kingsley v. Lawrence Cty.*, 964 F.3d 690, 700 (8th Cir. 2020) (quoting *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017)). A plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 556 U.S. 662, 676 (2009).

9

Most of Plaintiff's claims are asserted through § 1983 and will be discussed in the "Plaintiff's Claims" section below.

### 3.  Section 1985

Section 1985 "provides a cause of action for damages sustained as a result of conspiracies to obstruct justice, 42 U.S.C. § 1985(2), as well as conspiracies to deprive individuals of equal privileges and immunities and equal protection under the law, 42 U.S.C. § 1985(3)." *Kelly v. City of Omaha*, 813 F.3d 1070, 1077 (8th Cir. 2016). "In order to state a claim for conspiracy under § 1985, a plaintiff 'must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement.'" *Id.* at 1077-78 (quoting *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)). "This standard requires that 'allegations of a conspiracy [be] pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action.'" *Id.* (quoting *Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir. 1989)). While Plaintiff repeatedly alleges that the Defendants were all part of a conspiracy against him, he fails to allege particular and specific facts showing that any of the Defendants' alleged misconduct arose from any meeting of minds or an agreement. He has therefore failed to state a plausible claim for relief under § 1985.

### 4.  Section 1986

"In order to bring a § 1986 claim for failure to prevent a conspiracy to interfere with civil rights, a plaintiff must show that (1) the defendants had actual knowledge of a § 1985 conspiracy, (2) the defendants had the power to prevent or aid in preventing the commission of the § 1985 conspiracy, (3) the defendants neglected or refused to prevent the conspiracy, and (4) a wrongful act was committed." *Keefe v. City of Minneapolis*, 785 F.3d 1216, 1223–24 (8th Cir. 2015). "Accordingly, a § 1986 cause of action is dependent upon a valid § 1985 claim." *Id.* Because no valid § 1985 claim is stated here, Plaintiff has also failed to state a claim for relief under § 1986.

### 5.  Section 1987

Section 1987 authorizes United States attorneys, marshals, deputy marshals, and United States magistrate judges with the power to arrest, imprison, or bail offenders, and any other officer specifically empowered by the President to institute prosecution of the violations of certain civil rights statutes. Section 1987 does not allow a private cause of action. *Carmona v. Sausen*, No. CIV. 00-2447, 2006 WL 763211, at *5 (D. Minn. Mar. 16, 2006) (citing cases), *report and recommendation adopted sub nom. Carmona v. Ross*, No. CIV. 00-2447, 2006 WL 1004374 (D. Minn. Apr. 14, 2006); *Johnston v. Brisco*, No. 06-CV-03002, 2007 WL 1576026, at *30 (W.D. Ark. May 30, 2007) ("Obviously, plaintiffs have no authority to prosecute the defendants under this statute."), *aff'd*, 329 F. App'x 695 (8th Cir. 2009). Therefore, Plaintiff has failed to allege a claim for relief under § 1987.

### 6.  Section 1988

Section 1988 does not provide an independent federal cause of action either, but is, instead, recognized as a procedural rule. *Carmona*, 2006 WL 763211, at *5 (citing cases); *Johnston*, 2007 WL 1576026, at *31 ("Section 1988 merely provides for the application of common law in civil rights proceedings brought under other statutes and for attorneys' fees and experts' fees in civil rights cases."); *Stagemeyer v. Cty. of Dawson*, 205 F. Supp. 2d 1107, 1115 (D. Neb. 2002) ("42 U.S.C. § 1988 does not create an independent federal cause of action for the violation of federal civil rights."). Therefore, Plaintiff has failed to allege a claim for relief under § 1988.

## B.  Sovereign Immunity

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and state employees sued in their official capacity. *See, e.g., Egerdahl*, 72 F.3d at 619; *Dover Elevator Co.*, 64 F.3d at 446-47. Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., Dover Elevator Co.*, 64 F.3d at 444; *Nevels*

*v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. § 1983 which seek equitable relief from state employee defendants acting in their official capacity.

Here, Plaintiff seeks monetary damages from the NRC, the Nebraska Department of Correctional Services ("NDCS"), the NDHHS, and employees of these entities in their official and individual capacities. As discussed above, the Eleventh Amendment bars monetary damages claims against the state, its instrumentalities, and state employees sued in their official capacities. The NRC, NDCS, and NDHHS are state instrumentalities.[3] *See Pointer v. Lincoln Reg'l Ctr.*, No. 8:08CV80, 2008 WL 2773859, at *2 (D. Neb. July 14, 2008). The NRC, NDCS, and NDHHS Defendants are all alleged to be employees thereof and, as such, enjoy sovereign immunity for damages claims made against them in their official capacities absent a waiver of immunity by the state or an override of immunity by Congress. There is no indication that Nebraska waived or Congress overrode immunity here. Therefore, Plaintiff's claims against the NRC, the NDCS, the NDHHS, and their employees in their official capacities must be dismissed.

## C.  Claims Against City, County, and Employees in Official Capacities

Plaintiff purports to sue the City of Lincoln, Lancaster County, and several employees in their official and individual capacities. Plaintiff's claims against those employees in their official capacities are actually claims against their employing municipalities. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800

---

[3] Moreover, a suit may be brought under § 1983 only against a "person" who acted under color of state law. A state is not a "person" as that term is used in § 1983 and is not suable under the statute. *Hilton v. South Carolina Pub. Railways Comm'n*, 502 U.S. 197, 200-01 (1991). Thus, § 1983 does not create a cause of action against the NRC, NDCS, or the NDHHS.

(8th Cir. 1998) ("Liability for city officials in their official capacities is another form of action against the city . . . .").

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality (or other local government unit) can be liable under 42 U.S.C. § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. "To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated [his] federal right." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)). "If that element is satisfied, then a plaintiff must establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989)).

To prevail on a claim alleged against Lancaster County or the City of Lincoln, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). "Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

> Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the

13

governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation."

*Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700). A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018).

Here, Plaintiff has failed to allege sufficient facts suggesting a policy, custom, or—as discussed below—a failure to train on the part of the City of Lincoln or Lancaster County. Therefore, Plaintiff has failed to state a *Monell* claim of municipal liability.

## D. Miscellaneous Defendants

There are several Defendants against whom Plaintiff has failed to state a § 1983 claim regardless of the substance of the claims.

Defendant Lancaster County Sheriff Department, Lancaster County Public Defender Office, Lancaster County Department of Corrections:   Each county in Nebraska may sue and be sued in its own name, Neb. Rev. Stat. § 23-101, but the same is not true of county offices or departments. *See Holmstedt v. York County Jail Supervisor (Name Unknown)*, 739 N.W.2d 449, 461 (Neb. App. 2007) (York County Sheriff's Department was not proper defendant), *rev'd on other grounds*, 745 N.W.2d 317 (Neb. 2008); *Winslow v. Smith*, 672 F. Supp. 2d 949, 964 (D. Neb. 2009) (Gage County Sheriff's Office was not proper defendant); *see also Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992) (departments or subdivisions of local government are "not juridical entities suable as such").

Nebraska Police Department of Lincoln:   "[I]t is well settled that municipal police departments, sheriff's offices, and jails are not generally considered persons within the meaning of 42 U.S.C. § 1983 and thus not amenable to suit." *Ferrell v. Williams Cty. Sheriff's Office*, No. 4:14-CV-131, 2014 WL 6453601, at *2 (D.N.D. Nov. 4, 2014). *See also De La Garza v. Kandiyohi Cty. Jail, Corr. Inst.*, 18 F. App'x

14

436, 437 (8th Cir. 2001) (unpublished) (county jail and sheriff department not subject to suit under § 1983); *Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (city police department and paramedic services "are not juridical entities suable as such. . . . [t]hey are simply departments or subdivisions of the City government").

Underlined Unknown Defendants:  Plaintiff names several "Unknown" Defendants. None of Plaintiff's claims can proceed against these unspecified parties so long as these Defendants remain unknown and unidentified or so long as Plaintiff fails to include in his Complaint allegations specific enough to permit the identity of these Defendants after reasonable discovery.

## E.  Plaintiff's Claims

The court now addresses Plaintiff's specific claims.

### 1. Claim (1): No Jurisdiction Over Plaintiff

This claim necessarily challenges the validity of Plaintiff's criminal conviction and is therefore barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), where the Supreme Court held a prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment, or sentence unless the conviction or sentence is reversed, expunged, or called into question by issuance of a writ of habeas corpus.  *Id*. at 486–87; *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995). *See Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996) (indicating that, under *Heck*, court disregards form of relief sought and instead looks to essence of plaintiff's claims); *Harvey v. Horan*, 278 F.3d 370, 375 (4th Cir. 2002), *abrogated on other grounds by Skinner v. Switzer*, 562 U.S. 521 (2011) (*Heck* applies to claims for damages, as well as to claims for injunctive relief that necessarily would imply the invalidity of plaintiff's conviction); *Lawson v. Engleman*, 67 Fed. App'x 524, 526 n.2 (10th Cir. 2003) (*Heck* applied to plaintiff's claims for monetary, declaratory, and injunctive relief; *Heck* should apply when the concerns underlying *Heck* exist); *Hubbs v. Alamao*, 360 F. Supp. 2d 1073, 1080 (C.D. Cal. 2005) ("a civil committee, such as plaintiff, cannot seek to overturn his civil commitment

proceedings in a civil rights action for damages"). Plaintiff has not alleged that his conviction has been overturned, expunged, or called into question, and he is, therefore, barred from obtaining relief for a due-process violation predicated on demonstrating his conviction's invalidity.[4]

## 2.  Claim (2): Failure to Train and § 1983 Civil Conspiracy

Claim (2) fails to state a claim upon which relief can be granted for the following reasons.

### a.  Failure to Train

Plaintiff repeatedly alleges that several of the Defendants failed to train others, but failure-to-train claims apply to municipalities, not individuals. Further, it is not clear what training was lacking as to each Defendant and how that lack of training caused constitutional violations to Plaintiff.

As discussed above, "[s]ection 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from . . . a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016)). A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018); *see City of Canton* ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.").

---

[4] I reached the same decision in one of Jones's prior cases alleging this same claim. *Jones v. Carter*, No. 8:19CV288, Filing 8 at CM/ECF p. 9.

To state a viable § 1983 claim for "failure to train" against a municipality, Plaintiff must "plead facts sufficient to show that (1) [the municipality's] []training practices were inadequate; (2) [the municipality] was deliberately indifferent to the rights of others in adopting these training practices, and [the municipality's] failure to train was a result of deliberate and conscious choices it made; and (3) [the municipality's] alleged training deficiencies caused [Plaintiff's] constitutional deprivation." *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).

Plaintiff's Complaint contains no facts from which it might reasonably be inferred that any municipality is responsible for any constitutional deprivations as to Plaintiff.

Similarly, municipal supervisors cannot be held personally liable unless they "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [Plaintiff]." *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018) (quotation marks and citations omitted). Plaintiff has failed to allege any facts to support a claim for supervisory liability. *Johnson v. City of Ferguson*, 926 F.3d 504, 506 (8th Cir. 2019) ("Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights.").

## b. Conspiracy

Regarding the alleged § 1983 conspiracy, Plaintiff must prove: "(1) that the defendants conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured him." *Holmes v. Slay*, 895 F.3d 993, 1001 (8th Cir. 2018) (quoting *Bonenberger v. St. Louis. Metro. Police Dep't*, 810 F.3d 1103, 1109 (8th Cir. 2016)).

17

"[T]he plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Id.*; *see Duvall v. Sharp*, 905 F.2d 1188, 1189 (8th Cir. 1990) (per curiam) ("To plead conspiracy, a complaint must allege specific facts suggesting that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end."). Plaintiff's Complaint continually parrots the phrase "in this civil conspiracy against Plaintiff," but provides no particularity, specifics, or material facts describing an agreement and an overt injury to him.

### 3.  Claim (3): Legality of Underlying Criminal Conviction

This claim—challenging the legality of his confinement and his underlying criminal conviction—is in the nature of a habeas claim, and this identical issue is, in fact, being considered in Plaintiff's pending habeas cases in this court, *Jones v. Barr*, No. 8:20CV81 (Filing 13 at CM/ECF p. 2 (Claim One)) and *Jones v. Dawson*, No. 8:20CV275 (Filing 14 at CM/ECF p. 2 (Claim One)). *Heck v. Humphrey,* 512 U.S. 477, 481-82 (1994) (a prisoner's action challenging the validity or length of confinement must be brought in habeas action); *Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973) (habeas corpus is the sole federal remedy for prisoners attacking the validity of their conviction or confinement).

### 4.  Claim (4): Public Defender's Performance

With respect to Plaintiff's claims against Defendant Egger, he alleges that she breached several of her professional duties in representing him before the mental health board. However, 42 U.S.C. § 1983 specifically provides a cause of action against a person who, under color of state law, violates another's federal rights. *West v. Atkins*, 487 U.S. 42, 48 (1988). The conduct of lawyers, simply by virtue of being officers of the court, generally does not constitute action under color of law. *See DuBose v. Kelly*, 187 F.3d 999, 1003 (8th Cir. 1999). The court concludes that Egger's conduct does not constitute action under color of law. See *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a

lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *T.R. v. Havens*, 612 F. App'x 83 (3d Cir. 2015) (attorney appointed to represent individual in involuntary commitment proceedings was not a state actor, and thus could not be liable under § 1983 for alleged violation of individual's due process rights, where claims arose from acts performed pursuant to attorney's court-appointed representation). While a § 1983 claim may be brought against a public defender, or any other private individual, if he or she conspires with a state actor to deprive an individual of a federally-protected right, *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988), the Complaint's allegations fall far short of stating a plausible conspiracy claim. Plaintiff's individual-capacity claims against Egger will, therefore, be dismissed.

### 5.  Claim (5): Consequences for Failure to Participate in Treatment

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch,* 494 U.S. 113, 125 (1990) (internal quotation marks and citation omitted). "So-called substantive due process prevents the government from engaging in conduct that shocks the conscience." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal quotation marks and citation omitted). Plaintiff's claim that the NRC has a policy, custom, or practice of treating sex offenders in a way that increases the duration of their confinement and removes privileges if the offenders refuse to participate will be allowed to proceed. *Strutton v. Meade*, 668 F.3d 549, 557-58 (8th Cir. 2012) (district court properly analyzed substantive-due-process claims to determine whether state action of eliminating certain classes and modifying process groups for civilly-committed residents at sex-offender treatment center was so arbitrary or egregious as to shock the conscience).

19

**6.  Claim (6): Failure to Transfer to Lincoln Regional Center**

This claim will be dismissed as moot because Plaintiff advised the court on October 19, 2020, that he had been transferred from the NRC to the Lincoln Regional Center.[5]

**7.  Claim (7): Access to Courts**

To prove a violation of the right of meaningful access to the courts, Plaintiff must establish that Defendants did not provide him with an opportunity to litigate his claim in "a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (citation omitted). "To prove actual injury, [Plaintiff] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).

While Plaintiff complains that he has a 12-inch legal paper limit and does not have access to a law dictionary, a telephone book, a Nebraska bar directory, or a legal aid or paralegal, he fails to allege facts indicating that the lack of these items hindered his ability to bring an arguably meritorious legal claim. Indeed, Plaintiff's several lawsuits before this court establish his ability to access relevant legal sources and to successfully communicate with the court. As written, Plaintiff's Complaint fails to state an access-to-the-courts claim.

**8.  Claim (8): Searching Patient Cells**

"[I]nvoluntarily civilly committed persons retain the Fourth Amendment right to be free from unreasonable searches that is analogous to the right retained by pretrial detainees."*Arnzen v. Palmer,* 713 F.3d 369, 372 (8th Cir. 2013) (internal quotation

---

[5] Plaintiff advised the court on December 14, 2020, that he was transferred back to the NRC on December 7, 2020. (Filing 10.)

marks and citation omitted). To determine "reasonableness" in an institutional setting, a court must balance "the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish,* 441 U.S. 520, 559 (1979). In applying the balancing test, a court must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell,* 441 U.S. at 559. A court must defer to the judgment of institutional officials "unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of institutional security." *Arnzen,* 713 F.3d at 373 (internal quotation marks and citation omitted).

Plaintiff will be given leave to amend this claim to specifically identify the search or searches that allegedly violated his Fourth Amendment rights, the individuals who performed such searches, and factual allegations regarding the scope, manner, and location of the searches. Plaintiff should note, however, that other district courts in this circuit have held that while detainees retain some Fourth Amendment rights upon commitment to a corrections facility, searches of a committed civil detainee's personal items in their cell did not violate the Fourth Amendment. *Pyron v. Ludeman*, No. CIV. 10-3759, 2011 WL 3293523, at *6 (D. Minn. June 6, 2011) (citing cases), *report and recommendation adopted,* No. 10-CV-3759, 2011 WL 3290365 (D. Minn. July 29, 2011), *aff'd sub nom. Hollie v. Ludeman*, 450 F. App'x 555 (8th Cir. 2012).

## 9.  Claim (9): Deprivation of Flyer, Ink Pen & Leftover Holiday Food

A procedural due process claim is reviewed in two steps. The first question is whether [the plaintiff] has been deprived of a protected liberty or property interest. *Dover Elevator Co. v. Arkansas State Univ.,* 64 F.3d 442, 445-46 (8th Cir.1995). Protected liberty interests "may arise from two sources—the Due Process Clause itself and the laws of the States." *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989). If he does have a protected interest, we then consider what process is due by balancing the specific interest that was affected, the likelihood that the Offender Program procedures would result in an erroneous deprivation, and the Offender Program interest in providing the process that it did, including the administrative costs and

21

burdens of providing additional process. *Mathews v. Eldridge,* 424 U.S. 319, 332-35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

*Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).

Here, it is not clear that Plaintiff has a protected property interest in an unsolicited flyer and ink pen and uneaten holiday food. *Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (because plaintiff failed to identify what liberty or property interest state officials deprived him of when they refused to give him access to legal computer, procedural due process claim failed). However, even if there were such an interest, there is an available and adequate state post-deprivation remedy. 68 Neb. Admin. Code § 2-001 (grievance procedure set forth in NDCS Administrative Regulations applies to all institutions operated by the NDCS); 68 Neb. Admin. Code § 2-011 (grievances may be submitted to persons outside the NDCS, including tort claims pursuant to the State Tort Claims Act); 68 Neb. Admin. Code § 2-002.02 (any topic may be the subject of a grievance except matters over which the NDCS has no control, classification actions, and inmate disciplinary actions). When such remedies exist, deprivations of property do not violate procedural-due-process protections. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available). Therefore, this claim fails for failure to state a claim upon which relief can be granted.

### 10.  Claim (10): Disciplinary Procedures

Plaintiff next claims that when he was accused of unspecified rule violations, he did not have the right to address the allegations and evidence against him, to present witnesses, to have legal assistance, to prepare a defense, or appeal the decisions of the treatment team. Plaintiff claims that these accusations have increased the duration of his confinement, increased his "scoring levels," and have caused suspension without notice. This procedural-due-process claim may proceed.

### 11.  Claim (11): Practicing Mental-Health Care Without License

To the extent Plaintiff attempts to bring an independent § 1983 claim on the basis that individual Defendants violated state statutes governing mental-health practice, Neb. Rev. Stat. §§ 38-2101 to -2139 (Westlaw 2021) ("Mental Health Practice Act"), such claim must be dismissed. *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 832 (8th Cir. 2005) ("'[a]lleged violations of state laws, state-agency regulations, and even state court orders do not by themselves state a claim under 42 U.S.C. § 1983.'") (quoting *Whisman v. Rinehart*, 119 F.3d 1303, 1312 (8th Cir. 1997)).

### 12.  Claim (12): Attorney's Failure to Assist

Liberally construed, Plaintiff's allegations plausibly suggest that he was impeded in his efforts to challenge his confinement in the NRC when his requests for assistance from the NRC contract attorney, Whittamore-Mantzios, were denied.[6] Accordingly, this claim will be allowed to proceed.

### 13.  Claim (13): Forced Signing of Documents

Plaintiff claims that two receptionists forced him to sign unidentified papers "under duress" when he arrived at the NRC and that Defendant Heimann forced him to

---

[6] The court questions whether Plaintiff's claims for monetary damages against Whittamore-Mantzios in her official capacity may also be barred by sovereign immunity. As alleged in the Complaint, Whittamore-Mantzios is an attorney who contracts with the NDHHS to provide legal services to NRC patients requiring legal research assistance. Thus, for purposes of initial review, the court assumes that Whittamore-Mantzios' conduct was that of a person acting under color of state law as is required for a claim under 42 U.S.C. § 1983, *see West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993), but makes no determination as to whether she would be entitled to sovereign immunity in her official capacity.

sign a sex-offender-registration document against his will at some point. Plaintiff's Complaint fails to meet the minimal pleading standard in Federal Rule of Civil Procedure 8, which requires that every complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must state enough to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiff's allegations regarding the forced signing of documents are not sufficient to show that he is entitled to relief, to give the Defendants fair notice of what his claim is, or to inform Defendants of the grounds upon which this purported claim rests. Accordingly, this claim fails to state a claim upon which relief can be granted.

### 14.  Claim (14): Erroneous Administration of Medication

To prevail on his medical-care claim, Plaintiff must prove that the Defendant McAllister acted with deliberate indifference to his serious medical needs.[7] *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate-indifference standard includes both an objective and a subjective component. Plaintiff must demonstrate that (1) he suffered from objectively serious medical needs, and (2) Defendant McAllister knew of, but deliberately disregarded, those needs. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more than gross negligence, and mere disagreement with treatment decisions does not reach the level of a constitutional violation. Deliberate indifference

---

[7] The Eighth Circuit Court of Appeals has held that while medical-care claims of this nature are governed by the Due Process Clause of the Fourteenth Amendment when the plaintiff is not a prisoner, but a civil committee, the "deliberate indifference standard remains applicable." *Senty-Haugen v. Goodno*, 462 F.3d 876, 889 (8th Cir. 2006).

is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citation omitted). A prisoner's mere disagreement with the course of his medical treatment fails to state a claim against a prison physician for deliberate indifference under the Eighth Amendment. *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004).

Here, Plaintiff has alleged none of the necessary facts to state a claim for deliberate indifference to his serious medical needs.

### 15.  State Claims

Pending amendment of the Complaint as set forth in this Memorandum and Order, the court makes no finding regarding its jurisdiction over any potential state-law claims. In the event that Plaintiff fails to amend his Complaint in accordance with this Memorandum and Order, the court will not retain jurisdiction over any state-law claim, and such claim will be dismissed without prejudice to reassertion in state court.

### F.  Motion for Appointment of Counsel

Plaintiff moves for appointment of an attorney. (Filing 4.) The court cannot routinely appoint counsel in civil cases.  In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel. . . . The trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel . . . ." *Id.* (quotation and citation omitted).  No such benefit is apparent at this time. Thus, the request for the appointment of counsel will be denied without prejudice.

### G.  Leave to File Amended Complaint

Several of Plaintiff's claims discussed above fail to state a claim upon which relief can be granted, but could be amended to state a claim if plausible, truthful facts exist to do so. Therefore, on the court's own motion, Plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently states such claims against specific, named defendants (or includes allegations specific enough to permit the identity of unnamed defendants after reasonable discovery). The amended complaint must specify the capacity in which the defendants are sued; must either identify each defendant by first and last name or include allegations specific enough to permit the identity of unnamed defendants after reasonable discovery; and must set forth all of Plaintiff's claims (and any supporting factual allegations) against each defendant. To be clear, Plaintiff's amended complaint must restate the relevant allegations of his Complaint (Filing 1) and any new allegations. Plaintiff should be mindful to explain what each defendant did to him, when each defendant did it, how each defendant's actions harmed him, and which claims are asserted against which defendants. Plaintiff is warned that any amended complaint he files will supersede, not supplement, his prior pleadings.

If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, this action will be dismissed without prejudice and without further notice. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) after he addresses the matters set forth in this Memorandum and Order.

### IV.  CONCLUSION

Plaintiff will be given leave to file an amended complaint as to the following claims so long as plausible, truthful facts exist to do so:

▪ *Monell* municipal liability claims against the City of Lincoln, Lancaster County, and employees thereof in their official capacities

▪ Defendants labeled as "Unknown"

▪ Claim (2) (Failure to Train and § 1983 Civil Conspiracy)

▪ Claim (5) (Consequences for Failure to Participate)

▪ Claim (7) (Access to Courts)

▪ Claim (8) (Searching Patient Cells)

▪ Claim (10) (Disciplinary Procedures)

▪ Claim (12) (Attorney's Failure to Assist)

▪ Claim (13) (Forced Signing of Documents)

▪ Claim (14) (Erroneous Administration of Medication)

Plaintiff may **NOT** file an amended complaint as to the following claims because such amendment would be futile for the reasons discussed in the body of this Memorandum and Order:

▪ 42 U.S.C. §§ 1981, 1985, 1986, 1987, and 1988 claims

▪ Claims for money damages against the NRC, NDCS, and NDHHS and their employees in their official capacities.

▪ Claims against Defendants Lancaster County Sheriff Department, Lancaster County Public Defender Office, Lancaster County Department of Corrections, Nebraska Police Department of Lincoln

▪ Claim (1) (No Jurisdiction Over Plaintiff)

▪ Claim (3) (Legality of Underlying Criminal Conviction)

▪ Claim (4) (Public Defender's Performance)

▪ Claim (6) (Failure to Transfer to Lincoln Regional Center)

▪ Claim (9) (Deprivation of Flyer, Ink Pen & Leftover Holiday Food)

▪ Claim (11) (Practicing Mental-Health Care Without License)

IT IS THEREFORE ORDERED:

27

1.      The following Defendants are dismissed from this case without prejudice: Lancaster County Sheriff Department; Lancaster County Public Defender Office; Lancaster County Department of Corrections; Nebraska Police Department of Lincoln; the Nebraska Department of Correction Services; Craig Gilsdore in his official capacity; Dr. Agnes Stanis in her official capacity; Stephen O'Neill in his official capacity; Kathy Herian in her official capacity; Rosetta McAllister in her official capacity; Verlin Redlinger in his official capacity; Cheryl Heimann in her official capacity; Hannah Neal in her official capacity; Mike Gettman in his official capacity; Beverly Lueshen in her official capacity; Todd Phelps in his official capacity; The Nebraska Department of Health and Human Services; The Norfolk Regional Center; Dannette Smith in her official capacity; John Knoll in his official capacity; Tom Barr in his official capacity; Kris Boe Simmons in her official capacity; Julie Redwing in her official capacity; Dr. Jean Laing in her official capacity; Sheri Dawson in her official capacity; Mark Labouchadiere in his official capacity; Spence Propel in his official capacity; John Reynolds in his official capacity; Two (2) Unknown Female Employees Jane Does at Norfolk Regional Center in their official capacities; Tabitha Waggoner in her official capacity; Brandi in her official capacity; Marshall in his official capacity; Shannon in her official capacity; Amanda Holmgreen in her official capacity; Kim Ellenbergee in her official capacity; Candi in her official capacity; Steve Lindstadt in his official capacity; Michelle in her official capacity; Bonnie in her official capacity; Dayna in her official capacity; Tracy in her official capacity; Megan Donavan in her official capacity; Patricia Brand in her official capacity; Miranda in her official capacity; Pattie in her official capacity; Victer Vanfleet in his official capacity; Dawn Collins in her official capacity; Terri Bruegman in her official capacity; Travice in his official capacity; Compliance Team 6 Unknown Jane and John Does at Norfolk Regional Center in their official capacities; Lisa in her official capacity; Christ in his or her official capacity; Ryan in his official capacity; Security Specialist I's Ten (10) Unknown John Does at Norfolk Regional Center in their official capacities; and Security Specialist Technicians Unknown Jane and John Does at Norfolk Regional Center in their official capacities.

2.      Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time

specified by the court will result in the court dismissing this case without further notice to Plaintiff. In his amended complaint, Plaintiff must either identify each defendant by first and last name or, if unnamed, include allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery; state the capacity (official, individual, or both) in which each defendant is sued; and set forth all of Plaintiff's claims (and any supporting factual allegations) against each defendant. Plaintiff should be mindful to explain in his amended complaint what each defendant did to him, when each defendant did it, how each defendant's actions harmed him, and which claims are asserted against which defendants. PLAINTIFF'S AMENDED COMPLAINT **SHALL NOT** CONTAIN CLAIMS OR DEFENDANTS THAT HAVE BEEN DISMISSED WITHOUT LEAVE TO AMEND.

3.     In the event Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the Complaint (Filing 1) and any new allegations. Failure to consolidate all claims into **one document** may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

4.     The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event he files an amended complaint.

5.     The Clerk of the Court is directed to set a pro se case management deadline using the following text: March 12, 2021—amended complaint due.

6.     Plaintiff's Motion to Appoint Counsel (Filing 4) is denied without prejudice.

7.     Plaintiff's Motion Against Retaliation for Filing Civil Action (Filing 8) is in the nature of a Complaint filed without the permission of the court. Plaintiff's Motion is denied, but Plaintiff is granted leave to include the allegations contained in the Motion in the amended complaint as a separate claim.

8.      Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

DATED this 10th day of February, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

30